Filed 11/6/15  P. v. Ramos CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CESAR RAMOS,<br><br>    Defendant and Appellant. | B261608<br><br>(Los Angeles County<br> Super. Ct. No. MA061126) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Lisa M. Chung, Judge.  Affirmed.

David Cohen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Cesar Ramos appeals from his conviction on one count of assault with a deadly weapon, contending that the prosecutor committed misconduct by referring to Ramos's prior conviction for the same offense during closing argument and during his cross-examination of Ramos. We reject these contentions and therefore affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

On the night of September 8, 2013, Freddy Pina and his family were attending a birthday party for Pina's one-year-old great-niece at a park in Palmdale. Pina's nephew, Erick Berios had gone to use the restroom. As Berios left the restroom, Pina saw three men surround Berios – Cesar Ramos, Noe Diaz, and Rafael Santana, all members of the Playboys gang.

Pina went over to see what was happening and heard Diaz ask Berios where he was from. Pina told the three men that he did not want any problems. Diaz replied that Pina was in Playboys' territory. Pina's wife and another nephew came to investigate, but soon after a fight broke out between the two sides. Ramos hit Pina above his left eye with a beer bottle, causing a wound that required 39 stitches and leaving him with occasional double vision. Ramos, Diaz, and Santana ran off, but Diaz threatened to return with a "strap," which presumably meant a gun.

Ramos, Diaz, and Santana were tried jointly after each was charged with one count of assault with a deadly weapon against Pina (Pen. Code, § 245, subd. (a)(1)), along with allegations that the crime was committed for the benefit of their gang (Pen. Code, § 186.22, subd. (b)(1)).[1] The information also alleged that Diaz and Ramos personally inflicted great bodily injury for purposes of the three-year-sentence enhancement provided by section 12022.7, subdivision (a), and that Ramos had a prior

---

[1] All further section references are to the Penal Code.

2

conviction for assault with a deadly weapon for the purposes of other sentence enhancement provisions.[2]

Pina, Pina's wife, and his two nephews testified that Defendant Ramos struck Pina with the bottle. One of the nephews was impeached with his statement to the police 12 days after the incident where he identified someone else as the bottle thrower. Ramos testified that he had gone to the park to meet a girl and was focused on his conversation with her when he saw Diaz being attacked by Pina's group. According to Ramos, he intervened solely in order to protect his friend and someone else threw the bottle at Pina. One of the girls in Ramos's group testified that Ramos did not throw the bottle.

The jury convicted Ramos, Diaz, and Santana. It found true the allegation that Ramos personally inflicted great bodily injury, but found the gang allegation not true. Ramos admitted his prior conviction and was sentenced to 16 years in state prison. Only Ramos is involved in the present appeal.

Ramos's appeal centers on the trial court's decision to let the prosecution introduce evidence that Ramos had been convicted of assault with a deadly weapon, along with a street gang benefit allegation, in 2013. The trial court ruled that the evidence was admissible for one purpose only: to show the predicate pattern of criminal activity necessary to prove that the Playboys was a criminal street gang. Ramos contends the prosecutor committed misconduct by improperly referring to that conviction during both closing argument and cross-examination of Ramos in order to show that Ramos was predisposed to commit assaults.

## DISCUSSION

1.  *Facts Underlying the Misconduct Claims*

Over a defense objection the trial court ruled that the prosecution could introduce evidence that Ramos had been convicted in 2013 of assault with a deadly weapon, along

---

[2] The information also alleged that Diaz and Santana had other prior convictions for purposes of certain sentence enhancements, but those are not relevant to the issues on appeal.

with a street gang benefit finding, for the sole purpose of showing that the current offense was committed to benefit Ramos's gang. The evidence could not, however, be used to show that Ramos had a predisposition to commit the current offense. The jury was later instructed accordingly.

Ramos testified in his own behalf, and during direct examination by his lawyer was asked whether "you were convicted of a felony in the past?" Ramos answered yes. He was then asked why he "g[ot] into this fight?" and responded, "The one I got convicted for?" His lawyer clarified that he was asking about "This one, the one today we're in trial for."

The prosecutor cross-examined Ramos about the typical activities and conduct of the Playboys gang, eliciting admissions that the Playboys fights with other gangs, often escalating into gun use, and that it was considered important to protect the gang's name in order to maintain respect. The prosecutor then asked: "Now, you mentioned your prior felony conviction. That was for a [Penal Code section 245, subdivision (A)(1)] with a gang allegation; correct?" After Ramos answered yes, the prosecutor asked whether that conviction occurred in January 2013 and whether that meant Ramos had been convicted of "this exact same offense just eight months before this incident occurred; right?" Ramos answered yes to both. Defense counsel did not object to the questioning.

The second purported instance of misconduct occurred during closing argument, when, after reminding the jury that Ramos testified how gang members back each other up as part of their culture, the prosecutor then said, "[a]nd finally he was convicted of the same offense just eight months before the incident in this case." No objection was raised to this comment.

2.   *The Misconduct Claims Were Waived*

Because Ramos did not object to the two asserted instances of prosecutorial misconduct, the issue is waived. (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1328.) Ramos contends that his trial lawyer's failure to object amounted to ineffective assistance of counsel, an issue we consider next.

4

3.    *Ramos Did Not Receive Ineffective Assistance of Counsel*

Claims of ineffective assistance of counsel entail deficient performance assessed under an objective standard of reasonableness, and prejudice measured by a reasonable probability of a more favorable outcome absent the deficient performance.  (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 48.)[3]  The failure to make a meritless objection does not constitute ineffective assistance of counsel.  (*People v. Cunningham* (2001) 25 Cal.4th 926, 1038.)  We first conclude that Ramos did not receive ineffective assistance of counsel because an objection that the prosecutor had committed misconduct would have lacked merit.

A prosecutor commits misconduct when he uses deceptive or reprehensible methods to persuade the jury.  When a claim of misconduct is based on the prosecutor's jury arguments, we determine whether there is a reasonable likelihood that the jury improperly construed or applied the disputed remarks.  (*People v. Bryant, Smith And Wheeler* (2014) 60 Cal.4th 335, 427.)

The prosecutor's questions concerning the nature and timing of Ramos's recent conviction for assault with a gang benefit finding must be viewed in context.  Over defense objection, the trial court allowed evidence of that conviction for the sole purpose of showing that the Playboys gang engaged in a pattern of criminal activity and that Ramos committed the crime in order to benefit the gang.  (§ 186.22, subds. (a) & (e).)  Despite this, the prosecution did not introduce evidence of Ramos's conviction during its case-in-chief.  Instead, Ramos's lawyer introduced it during his direct examination of

---

**3**    Ramos contends that we should apply the federal "harmless beyond a reasonable doubt" standard because the prosecutor's conduct violated his federal constitutional due process rights.  We decline this request for two reasons.  First, a due process violation requires a pervasive level of misconduct that infects the trial with such unfairness that due process has been denied.  (*People v. Lopez* (2008) 42 Cal.4th 960, 965.)  We do not see how such a pervasive taint arises from two isolated comments.  Second, the issue was mentioned as part of Ramos's appellate argument on prejudice and was not supported by analysis or citation to authority.  We therefore deem the issue waived.  (*People v. Carrillo* (2008) 163 Cal.App.4th 1028, 1035.)

Ramos, albeit in a highly sanitized manner. When the prosecutor brought out the specifics of the conviction – that it occurred eight months earlier and was for assault with a deadly weapon, with a gang benefit allegation, he did so as part of a series of questions concerning the conduct and activities of the Playboys gang. Therefore the question was arguably within the scope permitted by the trial court.

We share Ramos's concern that the prosecutor might have pushed things too far when he summed up by asking, "So you were convicted of this exact same offense just eight months before this incident occurred; right?" Although this might have merited an objection in order to remind the jury of the proper use of the prior conviction evidence, we do not believe the question was deceptive or reprehensible. In any event, as we discuss below, the question did not prejudice Ramos.

As for the prosecutor's remarks during his closing argument, they too must be viewed in context. During his opening argument, the prosecutor mentioned Ramos's prior conviction, along with offenses committed by other Playboys gang members, and clarified that he did so in order to establish a pattern of activity by the Playboys gang. During his closing argument, the prosecutor recounted Ramos's testimony about the Playboys' past conduct, concluding, "[a]nd, finally, he was convicted of the same offense just eight months before the incident in this case." Although this final statement could be viewed as another attempt to drive home the point that Ramos was likely guilty based on his past conduct, the prosecutor had earlier told the jury that he raised the issue solely to show a pattern of gang activity, and the jury was instructed to use the evidence for that purpose only. Based on that, we conclude it was not reasonably likely that the jury was misled by the comment.

We alternatively hold that the complained of statements did not prejudice Ramos. The jury was admonished to use Ramos's prior conviction for the sole purpose of determining whether the street gang benefit allegation were true and that it could not use the evidence to conclude that Ramos was of bad character or had a disposition to commit the crime. We presume that the jury followed this instruction and therefore conclude that

6

Ramos was not prejudiced by the prosecutor's question or closing argument. (*People v. Boyette* (2002) 29 Cal.4th 381, 431.)

## DISPOSITION

The judgment is affirmed.

RUBIN, J.

WE CONCUR:

BIGELOW, P. J.

OHTA, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7